GEORGE H. GROSS *vs.* PETER BRYSON WOOD, INFANT, BY NANNIE COOK WOOD, HIS NEXT FRIEND (No. 74).

PETER BRYSON WOOD, INFANT, BY NANNIE COOK WOOD, HIS NEXT FRIEND, *vs.* CAESAR H. ROSENHEIM AND GEORGE H. GROSS (No. 75).

*New trials: discretionary; effect of order on judgment and verdict; appeals; after term; Baltimore City. Motion to strike out order granting new trial: exceptions. Verdicts: judgments based on——. Joint tort feasors: sued jointly; judgment not joint; no contribution between. Courts: judicial notice; death of judges. Bills of exception: extension of time for signing; preparation.*

When a motion is made for a new trial, the proper practice is to move also that the judgment be stricken out.    p. 366

But the effect of granting a new trial vacates the judgment and sets aside the verdict, although neither the judgment nor

the verdict be specifically mentioned in the order; and the case stands as though no trial had ever taken place.   p. 367

In general, there is no appeal from an order granting a new trial when such action is taken during the term.      p. 367

In Baltimore City an order granting a new trial, passed after the expiration of thirty days from the entry of the judgment, has the same effect as if passed after the term, unless a motion for the new trial was filed within thirty days.      p. 368

In an action against two joint tort feasors if there is a lack of sufficient evidence to entitle the plaintiff to a judgment as against one of the defendants, the usual practice is for the Court so to instruct the jury.      p. 368

A judgment against two tort feasors is in no sense a joint judgment, and one such defendant is not prejudiced by a verdict in favor of the other.      p. 368

Each, to the extent that he is guilty, is responsible to the plaintiff for the wrong done him, but there is no right of contribution between such wrongdoers.      p. 368

On appeal from the action of a court in a motion to strike out a judgment or to grant a new trial, it is not obligatory to take bills of exceptions; yet such a method is necessary or proper when extraneous evidence is to be presented.      p. 369

Where a party, without laches on his part, loses the benefit of his bill of exceptions by the death or illness of the judge, so that he can not get his exceptions signed or sealed, he will be entitled to a new trial, notwithstanding the lapse of considerable time.      pp. 370-371

Courts may take judicial notice of the date upon which the death of one of the judges occurred.      p. 371

The power of granting or refusing a motion for a new trial is an equitable one, and presumed to be exercised in accordance with the requirements of justice.      p. 372

On appeal the order of a court granting a new trial against two joint tort feasors will not be treated as a judgment of a court of law against the defendants, which could not be reversed as to one and affirmed as to the other; but the court

may, where for lack of sufficient evidence there could be no
verdict or judgment against one defendant, reverse the order
as to him and affirm it as to the other.            .            p. 373

Where the parties are unable to agree as to what a bill of excep-
tions should contain, the trial judge must determine the
matter.                                             p. 370

*Decided January 31st, 1912.*

Two appeals in one record from the Superior Court of
Baltimore City (GORTER, J.).

The two causes were argued together before BOYD, C. J.,
BRISCOE, PEARCE, BURKE and THOMAS, JJ.

*Wm. S. Thomas* and *Henry W. Williams* (with a brief by
*Williams, Thomas & Williams*), for the appellant, Peter
Bryson Wood.

*William L. Marbury* (with whom was *Jesse Slingluff* on
the brief), for the appellant, George H. Gross.

*Lawrence J. McCormick* and *Edwin W. Wells,* for Caesar
H. Rosenheim, one of the appellees.

THOMAS, J., delivered the opinion of the Court.

Peter Bryson Wood, infant, by his next friend, brought
suit in the Court of Common Pleas of Baltimore City against
Caesar H. Rosenheim and George H. Gross for injuries
alleged to have been caused by the negligent and careless
manner in which the defendants, their servants and agents,
operated automobiles on a public highway of Baltimore City.

The case was removed to the Superior Court of Baltimore
City, and the trial in that Court resulted in a verdict in
favor of the plaintiff against Rosenheim for $3,000.00, and
a verdict in favor of the defendant George H. Gross. The
verdict was rendered on the third of November, 1910, and on

the next day a motion for a new trial was filed in behalf of
Rosenheim. On the 7th of November, 1910, judgment on the
verdict was entered in favor of Gross for costs.

On the motion of Rosenheim, the Court, on the 26th of
November, 1910, extended the time for filing bill of excep-
tions to thirty days from the date of "the final determination
of the defendant's motion for a new trial." This motion
was overruled on the 14th of December, 1910, and on the
same day the time for filing the bill of exceptions was
further extended for sixty days from that date. On the
24th of December, 1910, an appeal was entered on behalf
of Rosenheim, and on the 10th of February, 1911, the time
for filing the bill of exceptions was extended for "thirty
days from February 14, 1911." The time for filing the bill
of exceptions was extended on the 16th of March, 1911, to
the 18th of March, and on the latter date was further
extended to the 22nd day of March, and again, on the last-
named date, to the 24th day of March, 1911, on which day
Rosenheim filed a motion for a new trial, and the Court
passed another order extending the time for filing bill of
exceptions to and including the 10th day of April, 1911.

On the 22nd of April, 1911, the motion for a new trial
was, by leave of Court, so amended as to include both
defendants, whereupon Gross made a motion in open Court
that the motion for a new trial be not received as to him.
This motion of Gross was overruled on the 13th of July,
1911, and on that date the Court below granted a new trial
against both defendants. The appeal in No. 74 is by George
H. Gross, and the appeal in No. 75 is by the plaintiff from
that order.

It is contended on behalf of the appellant, Gross, that
before the judgment in his favor could be legally stricken
out there should have been a motion asking for that relief,
and that even assuming that the effect of granting a motion
for a new trial against him was to strike out the judgment
in his favor, an appeal lies from that order, and that Rosen-

heim has shown no legal ground entitling him to have the judgment in favor of this appellant vacated.

The appellant in No. 75, who was the plaintiff below, insists that Rosenheim lost his right to have the bill of exceptions signed because of his failure to have the time for signing same properly extended, and that, moreover, he failed to show that he lost the benefit of his appeal because he was unable to get the bill of exceptions signed by the judge who sat in the case. On the other hand, Rosenheim contends, first, that the appeals should be dismissed because there is no appeal from an order granting a new trial, and because the evidence taken at the hearing of such a motion cannot be presented to this Court by a bill of exceptions; second, that he lost his appeal by reason of the inability of the presiding judge to sign the bill of exceptions, and that he was therefore entitled to a new trial, and, third, that the rights of Gross might have been effected by the appeal entered in the case, and as he lost his appeal without any fault on his part a new trial was properly granted against both defendants.

Counsel for Gross rely on the case of *Bailey* v. *Costello,* 94 Wis. 93, where the motion for a new trial was filed after a judgment had been entered and was denied by the Court below, and on appeal the Court said: "It was not erroneous to deny the motion for a new trial. It was not made until after judgment, and could not then be entertained unless joined with a motion to vacate the judgment." Undoubtedly the proper practice in such cases is to file a motion to strike out the judgment and for a new trial, and that is what was done in the case of *Preston* v. *McCann,* 77 Md. 30. But we think it equally clear that the effect of granting a new trial is to vacate the judgment and to set aside the verdict. In the case of *Evans* v. *Humphreys,* 9 App. Cases (D. C.), 396, where the lower Court found that it could not settle a bill of exceptions, and, therefore, ordered that the verdict be set aside and that a new trial be granted, the Appellate Court said: "It is true that the order of

Court does not in express terms vacate the previous judgment; it only vacates the verdict and orders a new trial. Undoubtedly it would have been more regular, and the record would have been more complete if the order had specified that the judgment as well as the verdict should be vacated; but that the effect of granting a new trial would be to set aside both the verdict and the judgment, without any specific mention of either, is the doctrine of sound reason. At common law, upon trial of issues by jury, a judgment rendered can only be based upon the verdict of a jury, and, ordinarily, a judgment without such verdict cannot be supported. When, therefore, a verdict has been set aside, a judgment based upon it must necessarily fall." And it is said in 16 *Ency. of Law,* 674: "An order granting a new trial, as a general rule, vacates a former judgment without any special order to set it aside, and sweeps away the verdict and leaves the case as though no trial had been had." In the case of *Waters* v. *Waters,* 28 Md. 11, CHIEF JUDGE BARTOL, referring to the granting of a motion for a new trial, said: "The verdict having been set aside and a new trial ordered, the case stood as if no trial had taken place, and no verdict had been rendered."

While ordinarily there is no appeal from the granting of a new trial, where the motion is filed after the expiration of the term at which a judgment in the case was rendered, an appeal lies from an order granting the motion because the effect of the order is to vacate the judgment. In the case of *Craig* v. *Wroth,* 47 Md. 281, JUDGE MILLER says: "The appellee's counsel has moved to dismiss the appeal upon the the ground that the setting aside of the judgment was a matter of discretion in the Court, and, therefore, not the subject of an appeal. If the judgment had been stricken out during the term at which it was rendered, this position would be sound. *Rutherford* v. *Pope,* 15 Md. 579. But where a Court takes such action after a lapse of the term an appeal lies. This has been frequently decided, and we need refer only to *Graff* v. *Merchants and Miners' Trans. Co.,*

18 Md. 364, where, as in this case, there was an order striking out a judgment of condemnation on an attachment, after the lapse of the term, and upon full consideration it was held the appeal would lie." This rule has been so firmly settled in this State it is not necessary to cite other cases. The judgment in favor of Gross was rendered November 7th, and the judgment against Rosenheim was entered on December 14th, 1910, and the motion for a new trial was not filed until the 24th of March following. Under Chapter 184 of the Act of 1886, P. L. L. 1888, Art. 4, sec. 171, in Baltimore City, an order passed after the expiration of thirty days from the entry of a judgment has the same effect as if passed after the term, unless the motion was filed within the thirty days. *Preston* v. *McCann, supra.*

The record in this case fails to show any ground whatever for the granting of a new trial against the defendant, Gross. No appeal had been taken by the plaintiff from the judgment in Gross' favor, and Gross could not have been affected in any way by the appeal taken from the judgment against Rosenheim. Nor could Rosenheim have been benefited by a reversal of the judgment in favor of Gross. They were sued as joint tortfeasors, and in such cases if there is no evidence sufficient to entitle the plaintiff to recover against one of the defendants, it is the usual practice in this State for the Court to instruct the jury accordingly. *M. & M. Trans. Co.* v. *Eichberg,* 109 Md. 211. The judgment in this case was not a joint judgment in any sense, and the defendant Rosenheim was not interested in or prejudiced by the verdict and judgment in favor of Gross. Each, to the extent that he was guilty, was responsible to the plaintiff for any wrong done him, but there was no right to contribution between such wrongdoers. 1 *Poe P. & P.;* secs. 114, 527 and 530; *Percy* v. *Clary,* 32 Md. 245; *Leppert* v. *Flaggs,* 101 Md. 71.

This brings us to a consideration of the questions more particularly involved in the appeal (in No. 75) by the plaintiff below.

The contention of the appellee that a bill of exceptions cannot be employed in such cases is not in accord with the precedents and decisions in this State, and we need only to refer to the case of *Tyrrell* v. *Hilton,* 92 Md. 184, where JUDGE PEARCE quotes the statement of JUDGE ALVEY in *Dumay* v. *Sanchez & Gibson,* 71 Md. 508, that "The practice in this State is well settled as to the manner of presenting cases on appeal from rulings on summary motions to quash, or to set aside process. As in all other cases where extrinsic evidence is introduced at the trial, the facts must be properly presented in some authenticated form, and the mode of presenting them is either by bill of exceptions, or by agreed statement of facts;" and the statement of JUDGE BRYAN in *Fleming* v. *Coulbourn,* 78 Md. 215, that "In this State, according to a long-established practice, it is not obligatory to take a bill of exceptions in summary proceedings before the Court, such as motions to quash attachments, to strike out judgments and such like matters."

We can not accept the view of the appellant, Wood, that Rosenheim lost his right of appeal on February 13th, 1911, because on that date the order of December 14th, 1910, extending the time for filing the bill of exceptions, expired, and the order of February 10th, 1911, did not take effect until February 14th, 1911, a day later. The time for filing the bill of exceptions was, as we have said, extended by the order of December 14th, 1911, to sixty days from that date, in other words, to February 12th, 1911, and on February 10th, 1911, before the time mentioned in the previous order had expired, and, therefore, while the Court still had control of the matter, the time was further extended to a date thirty days from the 14th of February, 1911. It can make no difference what terms the Court employed in designating the day to which the time was extended. What the Court did, and what it had the power to do, was to extend the time to the 16th of March, 1911, and it could not have done so more effectually by saying that it should be extended for thirty-two days from February 12th, 1911, or for thirty-

four days from February 10th, 1911. The order of February 10th took effect immediately, and operated to extend the time for filing the bill of exceptions to the 16th of March following, including that day.

The motion for a new trial, filed on the 24th of March, 1911, is not in the record, but it is conceded that the ground of the motion was that the defendant, Rosenheim, was unable to get the bill of exceptions signed because JUDGE SHARP, who presided at the trial of the case, was not able, by reason of his bad health, to sign it.

The evidence shows that JUDGE SHARP was forced to take "a trip for his health on the 14th of December," 1910; that he was in the Court of Common Pleas from the 10th to the 17th of January following, but by reason of his continued bad health was, about the 1st of February, again compelled to give up his work, and that he then went to Atlantic City and remained there until about the first of March, when he returned home, and was "more or less" confined to his home and bed from that time to the time of taking the testimony under the motion for a new trial. It further appears from the evidence that counsel for Rosenheim prepared a bill of exceptions some time in January or February, but that they and counsel for the appellant, Wood, were unable to finally agree to what it should contain, and that JUDGE SHARP, after his return from Atlantic City, was unable and refused to sign the bill of exceptions unless it was agreed to by counsel. It would be useless to examine the evidence for the purpose of determining which of the counsel was correct as to what the bill of exceptions should contain. That was to be settled and determined by the judge who presided at the trial of the case. The only question which the judge who heard the motion had to determine, and which we have to consider, is whether the defendant, Rosenheim, without any laches on his part, lost the benefit of his exceptions by reason of the illness and death of JUDGE SHARP. It is said in *State, use of Samuel,* v. *Weiskittle,* 61 Md. 48: "It is the established practice now, both in England and in this State,

that where a party, without laches on his part, loses the
benefit of his bill of exceptions, by the death or illness of a
judge, so that he can not get his exceptions signed or sealed,
he will be entitled to a new trial, notwithstanding the lapse
of considerable time." That case was approved and fol-
lowed in the case of *Preston* v. *McCann, supra,* and they
also determine that a bill of exceptions can not be signed by
any judge other than the one who presided at the trial of
the case. We think the evidence shows that to the time of
the taking of the testimony in support of the motion the
appellee, Rosenheim, had been unable to get the bill of
exceptions signed because of the illness of JUDGE SHARP.
It is true that JUDGE SHARP could have signed it had it been
presented to him between the 10th and 17th of January, but
said appellee was not required to have it prepared by that
time, and, so far as the evidence shows, he had no reason
then to suppose that JUDGE SHARP would not be able to sign
it later. It is suggested by the appellee, Wood, that there
is no evidence to show that JUDGE SHARP was not able after
the hearing of the motion to sign the bill of exceptions, or
that he is not still living. In answer to this suggestion it
may be said that the record also fails to show the date of the
hearing of said motion, but it does show that he was ill and
his condition worse at that time, and that the motion was
granted on the 13th day of July, 1911, and this Court can
take judicial notice of the fact that JUDGE SHARP died on
the 7th of July. In the case of *Vahle et al.* v. *Brackensieck,*
34 N. E. 524, the Supreme Court of Illinois said: "The
appellate Court, as well as this Court, will take judicial
notice of who are the judges of the various Courts of record
of the State, and of their terms of office, and the organization
and jurisdiction of such Courts. * * * The Court, of its own
motion, will advise itself, so as to verify matters of which
it is required to take judicial notice. * * * We are required,
therefore, to take judicial notice that the Hon. William
Marsh was one of the judges of the sixth judicial circuit,
in which said county of Adams is situated, when the June

Term, 1891, of said circuit convened, and that on the third of July, 1891, the day of the entry of said decree, his term of office had expired, and that Oscar P. Bonny, who purports to have rendered said decree as judge of said Court, was his successor in office." In the case of *Railway Co.* v. *Lawn,* 66 N. E. 508, the appellate Court of Indiana said in 1903: "This Court takes judicial notice that John L. McMaster was at the date of signing the bill of exceptions one of the judges of the superior Court of Marion County," and in the case of *People* v. *McConnel,* 155 Illinois, 192, 40 N. E. 608, the Supreme Court of Illinois held that that Court would take judicial notice of the date when a particular judge resigned. In 1 *Greenleaf on Ev.* (16 ed.), page 13, sec. 6a, it is said in note nine that the weight of American authorities is to the effect that Superior Courts are bound to take judicial notice of "who are justices of inferior tribunals," and it is said in 7 *Ency. of Ev.* 1010: "The Court takes judicial notice of who have been and are its own judges. It also takes notice of the judges of various Courts of record and general jurisdiction in the State where it sits, and who they were at a particular date." It is further urged by the appellant, Wood, that the time for the signing the bill of exceptions was not extended beyond the 10th of April, 1911, and that even if JUDGE SHARP had been able after that time to sign the bill of exceptions, Rosenheim would have lost his right of appeal because of his failure to have the time fur ther extended. But in this case the motion for a new trial was filed on the 24th of March, and from that time to the hearing of the motion, JUDGE SHARP was not able to sign the bill of exceptions, unless counsel agreed to what it should contain, and a new trial was not granted until after his death.

The power of granting or refusing a motion for a new trial is said to be an equitable one, and presumed to be exercised in accordance with the requirements of justice (*Waters et al.* v. *Waters et al.,* 26 Md. 53), and the order of the Court below, granting the new trial, will not therefore be treated as a judgment of a Court of law against the defend-

ants, which could not be reversed as to one and affirmed as to the other (*Willner* v. *Silverman,* 109 Md. 360), but we will, for the reasons stated, reverse the order as to George H. Gross, the appellant in No. 74 appeals, and affirm it as to Caesar H. Rosenheim, the appellee in No. 75 Appeals.

> *Order reversed as to George H. Gross, the costs to be paid by the appellee, Peter Bryson Wood, infant.*

> *Order affirmed as to Caesar H. Rosenheim cause remanded, costs to be paid by Peter Bryson Wood, infant of appellant in No. 75.*